**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

                  **Plaintiff,**              05-CR-55S(Sr)

v.

**TROY GILLON,**

                  **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was assigned to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1) for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant is charged in a one count indictment with having violated 21 U.S.C. § 841(a)(1) (Docket # 5). The facts of this case have been previously discussed by this Court in its previous Report, Recommendation And Order (Docket # 29) and therefore, will not be repeated herein. The only issue that will be addressed in this Report is the limited one of whether the special deputation of Buffalo Municipal Housing Authority ("BMHA") Officers Gilbert and Granville as members of the federal Career Criminal Task Force ("CCTF") complied with the established F.B.I. protocol for such action. A hearing on this issue was held by this Court on October 19, 2007 wherein the following witnesses were called by the government: (1) S.A. Paul Moskal,

who is the Supervisory Special Agent, Chief Division Counsel in the Buffalo F.B.I. Office; (2) Retired S.A. Richard G. Martinez;  (3) Retired S.A. George Gast; and (4) S.A. Peter Orchard.

A transcript of the proceedings on October 19, 2007 was filed on November 27, 2007  (Docket # 68).[1]  Post hearing memoranda were filed by the defendant (Docket #s 76 and 78) and the government (Docket #s 77 and 79) and the matter was taken under advisement by this Court on February 6, 2008.

## DISCUSSION AND ANALYSIS

A Memorandum of Understanding ("MOU") was entered into by the Buffalo Office of the F.B.I. and the BMHA, along with other agencies not pertinent to the matter herein, for the purpose of "set[ting] out the responsibilities of the parties" and stating the "overall mission of the group" in establishing the CCTF (T. 26-27).  The "overall mission" of the MOU is the formation of a "joint cooperative effort" for the "purpose" of "foster[ing] an efficient and cohesive unit capable of addressing narcotics violations and major thefts within the Metropolitan area." (T. 27).  The MOU was received in evidence as Joint Exhibit E in a redacted form.

BMHA Officers Gilbert and Granville were assigned to the CCTF by the BMHA pursuant to the aforesaid MOU and were sworn in as special deputies of the

---

[1]   References to the testimony contained in this transcript are designated as "T" followed by the appropriate page numbers.

CCTF on September 30, 2004 upon executing a "Deputation Statement" entitled "Oath of Office and Credential - Special Deputation" (Joint Exhibits L - 1 and L - 2 respectively). These "Deputation Statements" are considered to be "internal F.B.I. documents" that "deal with internal policy" of the F.B.I. (T. 43). The MOU expressly states that the "day to day operation and administrative control of the [CCTF members] will be the responsibility of a Supervisory Special Agent (SSA.) of the F.B.I." (Joint Exhibit E; T. 38-39).

The CCTF became part of "Squad Four" of the Buffalo F.B.I. Office, which squad "is supervised by an F.B.I. agent." (T. 44).

Retired S.A. Martinez had been assigned to the CCTF in April 1994 and was a member of that unit until his retirement from the F.B.I. in 2005. (T. 47-48). He was the "F.B.I. individual responsible for the day-to-day operation of the task force's, administrative and investigative duties" whereby he supervised "all the non-bureau personnel and F.B.I. agents that were assigned to the task force." (T. 48-49). BMHA Officers Gilbert and Granville were members of the task force that he supervised and the task force was considered to be an F.B.I. function. (T. 49-50).

Martinez reported to his supervisor, *to wit*, SSA George Gast who was the supervisory agent for Squad Four of the F.B.I. until his retirement from the F.B.I. in 2004. (T. 49-50). When SSA Gast retired in 2004, Martinez reported to SSA Andy Growalski who replaced Gast. (T. 50). As part of his supervisory duties, Martinez

assigned cases to the members of the task force, including BMHA Officers Gilbert and Granville.  (T. 50).

The Buffalo Office of the F.B.I. created an "administrative file" for the CCTF and it was assigned the designation "166 EBF 33032" and was deemed the "administrative control file for the task force."  (T. 51-52).  "Anything that was administrative in function for the operation of the task force [166 EBF 33032] would be [the] repository of information that would go in there."  (T. 52).  This administrative number, 166 EBF 33032 was used on the "Deputation Statement[s]" (Joint Exhibits L - 1, L - 2) "because this was an administrative action that the F.B.I. would carry out to get the individuals sworn in to conduct investigations."  (T. 53).  The allocation of the administrative number 166 EBF 33032 to the "Deputation Statement[s]" signed by BMHA Officers Gilbert and Granville (Joint Exhibits L - 1 and L - 2 respectively) was standard operating procedure for the F.B.I. "FBI protocol" equates to standard operating procedure of the F.B.I. (T. 58-59).

While Martinez was active as the F.B.I. task force coordinator, BMHA Officers Gilbert and Granville reported to him on a "day-to-day basis." (T. 63).  The F.B.I. agents and all the other officers who formed the CCTF worked together on a "day-to-day" basis out of a special office rented by the F.B.I. (T. 63-64).

The non-F.B.I. members, including Gilbert and Granville, were required "to follow FBI guidelines and policies" in "conduct[ing] criminal investigations." (Joint Exhibit E; T. 67).

Martinez was assigned as the "case agent" of F.B.I. file 166 EBF 33032 which was considered to be the "control file" or an "umbrella file to govern all the cases that are worked on by the CCTF" and it "only concerned the operation of cases at [sic] the CCTF." It was done this way because it would have been impractical to have to swear officers as deputies every time an investigation was instituted on which they were working. (T. 70-71, 76). By doing it this way, *i.e.*, assigning 166 EBF 33032 to the "Deputation Statement[s]," (Joint Exhibits L - 1 and L - 2), "the BMHA officers [were authorized] to work on literally any single case at [sic] the CCTF," but the "FBI agents and supervisors ran the show." (T. 71).

Joint Exhibits M1 - M5 are F.B.I. 302 reports that related to "activities that were being done by Dennis Gilbert and [Daniel] Granville under case number 245 D 30056 under [Martinez's] supervision and direction." (T. 75).

Retired S.A. George Gast testified that prior to his retirement from the F.B.I., he had been the supervisory special agent for Squad Four which included the CCTF. (T. 77-78). He held regular meetings each Monday morning with members of the CCTF for the purpose of coordinating "the weekly activities of the task force to find out what had been done in the prior week" as well as "plan[ning] out the schedule for

5

the current week as to investigative strategy, any upcoming arrests, any upcoming search warrants, to make sure there was sufficient manpower, to make sure that other agencies that were involved in the investigations were notified as to the task force's plans, and these other agencies were invited to participate in those Monday meetings." (T. 79).

When Gast was not available as the supervisor, other agents, including S.A. Orchard, were "designated as relief supervisors who would stand in for the supervisor in his absence." (T. 81).

During his active duty as supervisory special agent with the Buffalo F.B.I. Office, Gast signed the Special Deputation forms, including those for BMHA Officers Gilbert and Granville (Joint Exhibits L - 1 and L - 2). (T. 82). He further testified that only an F.B.I. "supervisor can open a [CCTF] investigation" including the "opening of a confidential informant [file] since that is the same as opening a criminal investigation." (T. 88). (*See also* the testimony of S.A. Orchard, T. 97, 100, 106-107). The F.B.I. "administrative file" number was used on the Special Deputation forms, *i.e.,* 166 EBF 33032, for the CCTF because "the task force was opening and closing files on a regular basis, and it would have been logistically impossible to list every file number that was being utilized in investigations of the task force at any given time. (T. 82-83).

Non-F.B.I. task force officers can "be out on the streets without an F.B.I. agent [present]" but they cannot "set up initial target meetings without acting under the

supervision of an F.B.I. agent. Their investigative work while "out on the streets" is considered to be under F.B.I. supervision. (T. 88, 91).

After Gast retired from the F.B.I. in 2004, S.A. Andy Growalski was appointed as the Acting Supervisor of Squad Four (T. 80). S.A. Gary Violante replaced S.A. Rick Martinez as the case agent/coordinator of the CCTF. (T. 93).

As to the events of February 2, 2005 relating to the arrest of the defendant, S.A. Peter Orchard was the acting supervisor of Squad Four including the CCTF and S.A. Gary Violante was the coordinator for the CCTF and both were on the scene and present when the defendant was arrested. (T. 93-94). Prior to the placing of the stakeout at the Marriott Hotel location and the arrest of the defendant on February 2, 2005 an "Operation Plan, CW Drug Purchase" was established. (Joint Exhibit N). Before this plan could be implemented, it had to first be approved by the task force coordinator and then by the supervisor in charge of Squad Four. This approval by the Squad Four supervisor is noted on the back of the "Operations Plan" (Joint Exhibit N) (T. 61-62) by the signature of SSA Growalski. (T. 97). Thereafter, the "Operations Plan" (Joint Exhibit N) was given "an upload number [S:/CCTF//0032504.oth]" because "every document that's uploaded into the F.B.I.'s computer has to be given a name, and that's specifically the name of that document." (T. 60).

Because BMHA Officer Gilbert was the officer "that set up the buy" by the CW from the defendant and the officer who had "set up the operation" for the evening of February 2, 2005, he "was directing the investigation that night during the buy" but neither he nor Officer Granville were acting as supervisors on the CCTF. (T. 100-101, 104, 106). S.A. Orchard testified that he was the Acting Supervisor of Squad Four on the evening of February 2, 2005 and BMHA Officers and Gilbert, as well as the other members of the CCTF on the scene that evening, were working and acting under his supervision. (T. 93, 95-96, 104).

It is the opinion of this Court, based on the aforesaid testimony of Retired S.A.s Martinez and Gast and S.A. Orchard, that the established F.B.I. protocol for the use of CCTF officers Gilbert and Granville in the arrest of the defendant on February 2, 2005 was fully complied with and therefore, the actions of BMHA Officers and Gilbert as Special Deputies pursuant to Title 21 U.S.C. § 878 were in accordance with the law.

In conclusion, it is the further opinion of this Court that this is a classic case where the defendant is placing form over substance in his attempt to have the evidence suppressed. Therefore, it once again is the recommendation of this Court that his motion to suppress be DENIED.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  See, e.g., *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2**

**(concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

The Clerk is directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

   \s\ **H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

**DATED:**    **Buffalo, New York**
              **March 7, 2008**